UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVON DUNELL DUNBAR,

        Case No. No. 18-13209

    Plaintiff,        District Judge Marianne O. Battani

v.        Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Devon Dunell Dunbar ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Supplemental Security Income ("SSI") under XVI of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #14] be DENIED.

**I.   PROCEDURAL HISTORY**

    On February 9, 2016, Plaintiff filed an application for SSI, alleging disability as of May 28, 2012 (Tr. 169). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on March 22, 2018 in Livonia, Michigan (Tr. 29).

Administrative Law Judge ("ALJ") Ramona L. Fernandez presided. Plaintiff, represented by attorney Barry Keller, did not appear at the hearing (Tr. 32). ALJ Fernandez stated that if Plaintiff failed to respond to an order to show cause for his failure to appear, she would "issue a decision based on the written record and the vocational testimony" (Tr. 32). Vocational Expert ("VE") Joanne White testified (Tr. 34-39). On April 6, 2018, ALJ Fernandez determined that Plaintiff was not disabled (Tr. 15-25). On August 16, 2018, the Appeals Council denied review of the ALJ's decision (Tr. 1-3). Plaintiff filed suit in this Court on October 15, 2018.

## II. BACKGROUND FACTS

Plaintiff, born April 30, 1988, was just short of his 30th birthday at the time of the administrative decision (Tr. 25, 169). He completed 12th grade and worked previously as a dishwasher and interpreter for the United States Army (Tr. 189). His application for SSI alleges disability due to gunshot wounds, Post Traumatic Stress Disorder ("PTSD"), a mood disorder, Obsessive Compulsive Disorder ("OCD"), personality disorder, asthma, and back and leg pain (Tr. 192).

### A. Plaintiff's Testimony

Plaintiff did not appear at or testify at the administrative hearing.

B. Medical Records[1]

1. Records Related to Plaintiff's Treatment

September, 2010 Michigan Department of Correction ("MDOC") records state that Plaintiff was referred for Assaultive Offender Therapy for six months (Tr. 343). March, 2011 discharge records from the six-month program note passing grades in all categories (Tr. 344-346). Treating records note that Plaintiff "consistently presented throughout group as an articulate, perceptive and bright young man" (Tr. 346).

March, 2012 MDOC records note Plaintiff's denial of symptoms of mental illness (Tr. 254-255). He reported that he underwent mental health treatment prior to the incarceration (Tr. 264). In May, 2012, Plaintiff received emergency surgery of exploratory laparotomy, vein repair, and a cholecystectomy after bullet wounds to the abdomen and chest (Tr. 245). February, 2013 records state that Plaintiff did not take psychotropic medication but reported symptoms of PTSD including anxiety and paranoia (Tr. 271, 278). The following month, David Forsythe, M.D., finding the presence of PTSD after Plaintiff was threatened by a group of other prisoners, noted a history of substance abuse, and personality disorder (Tr. 284, 287). He assigned Plaintiff a GAF of 61[2] (Tr. 284). Plaintiff exhibited a

---

[1] Plaintiff's arguments for remand pertain exclusively to his alleged psychological limitations. While the medical transcript has been reviewed in full, the discussion is limited mostly to his psychological treatment/evaluations. Records significantly predating the period under consideration have been reviewed but are omitted from the present discussion.

[2] GAF scores in the range of 61 to 70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *Diagnostic and Statistical*

normal appearance and was fully oriented with intact memory (Tr. 286). He reported the next month that he was sleeping well and declined an offer of psychotropic medication (Tr. 290). He was assigned a GAF of 66 (Tr. 291). Other than PTSD, he presented "with no evidence" of mental illness (Tr. 293). Later the same month, Plaintiff declined further counseling, noting that he believed that "time will heal the wounds" (Tr. 300). He was assigned a GAF of 70 (Tr. 301).

In March, 2015, Plaintiff reported that he held grudges, avoided thinking about certain past events, and experienced depression and anxiety (Tr. 361). A June, 2015 mental health assessment noted an appropriate appearance, full orientation, normal behavior, average intellect, normal thought processes, and normal thought content (Tr. 381). He was assigned a GAF of 70 (Tr. 382).

Mental health intake records from February, 2016, note that Plaintiff was accompanied by his fianceé and her two children (Tr. 395). Plaintiff reported that he lived with them and his grandmother (Tr. 395). He reported that he stayed in touch with his mother (Tr. 395). He exhibited depression, average grooming, and an unremarkable attitude (Tr. 395). He appeared fully oriented with a normal thought process (Tr. 397). He was assigned a GAF of 50 due to PTSD, anxiety, depression, OCD, economic problems, occupational problems, and housing problems[3] (Tr. 400). He was given a poor prognosis due

---

*Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*"), 34.

[3]A GAF score of 41 to 50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability  *DSM–IV–TR* at 34.

to his lack of employment experience and the effect of his criminal record on the ability to secure employment (Tr. 401). Physical treating records from the following month note the condition of anxiety but no depression (Tr. 412).

## 2. Non-Treating Records

In April, 2014, Moises Alviar, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of continued left leg and foot numbness and pain since sustaining a gunshot wound in 2003, pain from a gunshot wound to the arm in 2005, and digestive problems since being shot in the stomach in 2012 (Tr. 329). Plaintiff reported that he had been told that he had PTSD and a personality disorder but had not received psychological treatment (Tr. 329). Dr. Alviar noted that Plaintiff was able to get on and off the examining table but had a slow gait and limited ability to squat and bend (Tr. 330, 334).

The same day, psychiatrist M. Dibai, M.D. completed a consultative psychiatric examination on behalf of the SSA, noting Plaintiff's report that he was "paranoid and suspicious of everyone" since sustaining the gunshot wounds on three occasions (Tr. 338). Plaintiff noted that he experienced anxiety and was given Xanax while in prison but declined to take any psychotropic medications or use illicit drugs at the time of the interview (Tr. 338). He reported that he had been incarcerated from 2007 to 2011 for armed robbery and was in juvenile detention between the ages of 12 and 16 (Tr. 339). Plaintiff reported that he had bonded with his mother, got along with family members, and did not have conflicts with

anyone (Tr. 339). He appeared cooperative and expressive but "anxious and rambling" (Tr. 339). He exhibited "atrocious" hygiene and grooming (Tr. 340). He appeared "amotivational" with impaired insight (Tr. 340). Dr. Dibai concluded that Plaintiff would require a payee or guardian to handle his benefit funds (Tr. 341). He noted that Plaintiff "did not seem to be able to adapt to assignments at work or changes of assignments (Tr. 341).

In April, 2016, Ashok Kaul, M.D. reviewed the psychological treating and consultative records on behalf of the SSA, finding that Plaintiff experienced mild restriction in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 51).

### C. Vocational Testimony

The ALJ posed the following set of restrictions to VE Joanne White, describing a hypothetical individual of Plaintiff's age, educational level, and (lack of) past relevant work:

> [Exertionally] light work with only occasional climbing, stooping, kneeling,[4] crouching, crawling, or balancing, no use of ladders, ropes, or scaffolds, who must avoid concentrated exposure to fumes and respiratory irritants, as well as hazards that include moving machinery and unprotected heights. The work

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

should be unskilled with simple instructions, routine changes simple decision-making, involve only occasional contact with coworkers, no teamwork, and should require no interaction with the general public in order to perform job tasks. In your opinion, would there be jobs that exist in significant numbers in the nation that such an individual could perform? (Tr. 34).

The VE testified that the above limitations would allow for the light, unskilled work of a garment sorter (117,000 positions in the national economy); merchandise marker (800,000); and night cleaner (600,000) (Tr. 34-35). She testified further that if the same individual were limited to sedentary work, he could perform the jobs of a document preparer (600,000); lens inserter (100,000); and bench hand (210,000) (Tr. 35). She stated that the need to be absent two work days each month, or be off task for 20 percent or more of the workday would preclude all competitive employment (Tr. 36). She testified that her job findings were based on the information found in the *Dictionary of Occupational Titles* ("*DOT*") except for her testimony regarding absenteeism and being off task which was based on her own professional experience (Tr. 36).

In response to questioning by Plaintiff's attorney, the VE stated that she could "not say" whether the garment sorter and merchandise marker workplace temperature control would exacerbate the condition of asthma (Tr. 37). She stated that the document preparer position did not require computer skills (Tr. 37). She stated that someone unable to follow even basic instructions would be precluded from all work (Tr. 38). She stated that the garment worker, merchandise marker, cleaner, document preparer, and bench assembler positions required only "very limited" interaction with others (Tr. 39). As to the lens fitter

position, the VE testified that it was available to an individual "working steadily" and "on-task 90 percent of the workday" (Tr. 39).

### D. The ALJ's Determination

ALJ Fernandez noted that Plaintiff did not show up for the hearing or respond to "show cause" orders, adding that Plaintiff's attorney stated that he was unable to reach his client (Tr. 15). Then, citing the medical transcript, ALJ Fernandez found that Plaintiff experienced the severe impairments of "[s]tatus post multiple [gunshot wound], neuropathy, asthma, obesity, PTSD, [and] anti-social personality disorder," but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17). The ALJ found that Plaintiff experienced moderate restriction in understanding, remembering, and applying information; interacting with others; concentration, persisting, and maintaining pace; and only mild limitation in the ability to adapt and manage himself (Tr. 18-19).

ALJ Fernandez determined that Plaintiff had an RFC for light work with the following additional restrictions:

> [O]ccasional climb, stoop, kneel, crouch, crawl, or balance; can never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to fumes and moving machinery and work at unprotected heights. The work must be unskilled with simple instructions and routine changes. It should require only occasional contact with coworkers, no teamwork and no interaction with the general public in order to perform job tasks (Tr. 19).

Citing the VE's testimony, the ALJ determined that Plaintiff was capable of exertionally light work as a garment sorter, merchandise marker, or night cleaner and the

-8-

sedentary work of a document preparer, lens inserter, and bench hand (Tr. 24, 34-35).

The ALJ found that the evidence did not support a disability finding, noting that Plaintiff first sought mental health counseling in the month that he applied for SSI (Tr. 21). She accorded "limited weight" to the psychological consultative examiner's finding of problems in adaptation and dealing with PTSD, noting that an SSA field officer did not find mental limitations (Tr. 22). She accorded only "little weight" to the various GAF scores, noting that they did "not provide a reliable longitudinal picture of the claimant's mental functioning" (Tr. 22). She noted that Plaintiff declined to take psychotropic medication and stated in April, 2013 that "time [would] heal [his] wounds" (Tr. 22). She noted that the prison health service records did not reflect "significant mental distress" (Tr. 22). She observed that no evidence supported the conclusion that Plaintiff received mental health counseling after the February, 2016 intake assessment (Tr. 22).

### III.   STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999).

## V. ANALYSIS

In his sole argument for remand, Plaintiff contends that the limitations posed to the VE at the administrative hearing did not reflect his full degree of psychological limitation. *Plaintiff's Brief,* (ECF No. 14, PageID468.). He argues, in effect, that the omissions in the hypothetical limitations posed to the VE invalidates her responding job testimony forming the basis of the ultimate Step Five determination that he was capable of a significant number of jobs. *Id.* He contends that the ALJ erred by declining to adopt Dr. Dibai's April, 2014 consultative finding of problems in adaptation (Tr. 341) or the mental health intake records from February, 2016 showing a GAF of 50 (Tr. 400). *Id.*

Plaintiff is correct that vocational testimony made in response to a hypothetical

question that does not include all of a claimant's relevant limitations does not constitute substantial evidence. *Ealy v. Commissioner of Social Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Varley v. Commissioner of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987); see also *Teverbaugh v. Commissioner of Social Sec.*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003)(Roberts, J)(reversible error for ALJ to rely upon unsupported job findings). However, the ALJ is not required to include discredited allegations or evidence in the question to the VE. *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118-119 (6th Cir. 1994).

The ALJ acknowledged and summarized the findings by Dr. Dibai and the GAF of 50 assigned at the February, 2016 intake examination (Tr. 21-22). She accorded "limited weight" to Dr. Dibai's finding that Plaintiff "did not seem to be able to adapt to assignments at work or changes of assignments," noting that Dr. Dibai examined Plaintiff on only one occasion (Tr. 22). She also declined to adopt the GAF of 50 assigned at the February, 2016 (as well as the earlier GAFs showing a lesser degree of psychological limitation) on the basis that the scores reflected the assessor's "judgment about the severity of an individual's symptoms or level of mental functioning at a particular moment in time" but did not "provide a reliable longitudinal picture" of a claimant's ongoing mental functioning (Tr. 22). She noted that as of February, 2013, Plaintiff did not exhibit significant mental distress and that his symptoms were deemed mild (Tr. 20). She noted that he refused psychotropic medication in April, 2013 and reported that symptoms of PTSD were lessening (Tr. 20-21). She cited June, 2015

records showing that Plaintiff was not receiving mental health treatment (Tr. 21-22).

The ALJ's finding that Plaintiff did not experience more than moderate psychological limitation is supported by my own reading of the record, showing that he was described as an "articulate, perceptive, and bright young man" at the end of assaultive offender therapy (Tr. 346), March, 2013 records showing that Plaintiff exhibited a normal appearance, orientation, and memory (Tr. 286), and his refusal of mental health treatment while in jail (Tr. 293). While Dr. Dibai noted that Plaintiff was "rambling" and had "atrocious" hygiene and grooming on the day of the SSA examination, the other records show that Plaintiff exhibited an unremarkable appearance with normal thought processes and normal thought content.

The ALJ's finding that the GAF of 50 (assigned at the February, 2016 intake examination) should not be interpreted to reflect Plaintiff's long-term condition, is well supported by case law from this Circuit. *See Kornecky v. Commissioner of Social Sec.,* 2006 WL 305648, *13 (6th Cir. February 9, 2006)(*citing Howard v. Commissioner of Social Sec.,* 276 F.3d 235, 241 (6th Cir.2002))("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place"); *Jordan v. Commissioner of Social Sec.,* 2011 WL 891198, *5 (E.D. Mich. January 14, 2011)(GAF scores "subjective opinions, representing . . . snapshot of a person's level of functioning at a given moment in time, not a rating of their ability to work"). Applicably here, the February, 2016 GAF of 50 reflected not only Plaintiff's report of PTSD, anxiety, and depression, factors but the non-work-related limitations of economic and housing problems (Tr. 400). The intake

examination also includes findings of full orientation and a normal thought process, consistent with the ability to perform a range of unskilled work (Tr. 397). Moreover, while the ALJ permissibly declined to adopt *any* of the GAF scores found in the transcript, the other scores, ranging from 61 to 70, reflect only a mild degree of psychological limitation (Tr. 284, 291, 301). As such, the ALJ's adoption of Dr. Kaul's findings of no more than moderate limitation in interacting with others and concentration, persistence, and pace does not provide grounds for remand.

Relatedly, the hypothetical restrictions of unskilled work with "simple instructions, routine changes, simple decision-making . . . only occasional contact with coworkers, no teamwork, and . . . no interaction with the general public" adequately address Plaintiff's moderate limitations in interacting with others and concentration, persistence, or pace (Tr. 18-19). *See Hilkemeyer v. Barnhart*, 380 F.3d 441, 446–47 (8th Cir. 2004)("[N]ot requiring Hilkemeyer to perform work with the public and to have only limited contact with co-workers and supervisors" was sufficient to account for the finding of moderate "social dysfunction").

Plaintiff's implied claim that the modifiers of unskilled work with simple instructions, routine changes, simple decision-making are insufficient to account for moderate concentrational limitations stands at odds with case law from the Sixth Circuit and this district which state that in many cases, the modifiers of simple, routine, and unskilled work are sufficient to account for moderate concentrational difficulties. *See Smith-Johnson v. Commissioner of Social Sec.*, 579 Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir.

September 8, 2014)(moderate concentrational limitations adequately addressed by restricting the claimant to unskilled, routine, repetitive work); *Despain v. Commissioner of Social Sec.*, 2014 WL 6686770, *12 (E.D. Mich. November 26, 2014)(same); *Lewicki v. Commissioner of Social Sec.*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010)(the modifiers of "simple routine work" adequately accounted for the claimant's moderate concentrational deficiencies).[5] Contrary to Plaintiff's argument that the hypothetical question to the VE does not reflect his full degree of mental impairment, substantial evidence supports the ALJ's inclusion of some of the claimed limitations and omission of others in the question to the VE.

In summary, because the ALJ's decision was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

---

[5]

Plaintiff cites *Ealy v. Commission of Social Sec.*, 594 F.3d 504, 516-517 (6th Cir. 2010), without elaboration, in support of his argument that his mental limitations were not adequately addressed in the question to the VE. However, *Ealy* does not hold that the modifiers found in ALJ Fernandez's hypothetical question were inadequate to address moderate deficiencies in concentration, persistence, or pace. Rather, the *Ealy* Court determined that the modifiers of "simple, repetitive" (drawn from a non-examining medical source conclusion) impermissibly truncated the same source's conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.*, 594 F.3d at 516. The position that "simple and repetitive" or in this case, "unskilled work, simple instructions, routine changes, simple decision-making" are intrinsically insufficient to convey moderate concentrational deficiencies reflects an erroneous reading of *Ealy*.

## **VI. CONCLUSION**

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #14] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Dated: September 23, 2019      s/R. Steven Whalen
                               R. STEVEN WHALEN
                               UNITED STATES MAGISTRATE JUDGE

### CERTIFICATE OF SERVICE

I hereby certify on September 23, 2019 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants September 23, 2019.

                               s/Carolyn M. Ciesla
                               Case Manager for the
                               Honorable R. Steven Whalen